UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                    :

LOUIS BAGUIDY,                           :
                                      :

                Plaintiff,         :      **OPINION AND ORDER**
                                      :      16-cv-3096(DLI)(RLM)

      -against-                     :

BORO TRANSIT INC., a/k/a CONSOLIDATED BUS   :
TRANSIT INC., and LOCAL 1181-1061, ATU UNION,  :
                                      :

                Defendants.      :
                                        :
------------------------------------------------------------------- x

**DORA L. IRIZARRY, Chief United States District Judge:**

Plaintiff Louis Baguidy ("Plaintiff") filed the instant action against Defendants Boro Transit (also known as Consolidated Bus Transit Inc.) ("Boro") and Local 1181-1061, Amalgamated Transit Union, AFL-CIO[1] ("the Union," and together with Boro, "Defendants") alleging that Boro discriminated against him, retaliated against him when he complained of being subjected to discrimination, and created a hostile work environment under the New York State Executive Law (Human Rights Law § 296) ("NYSHRL") and the Administrative Code of the City of New York, § 8-107.1(a) *et seq.* ("NYCHRL"). Plaintiff also seeks counsel fees pursuant to section 16(b) of the Fair Labor Standards Act of 1938 and under the New York Labor Law. *See* Amended Complaint ("Am. Compl."), Dkt. Entry No. 20, at ¶¶ 1-2. Plaintiff further alleges that the Union breached the duty of fair representation that it owed Plaintiff under the "Federal statute"[2]

---

[1]     The original complaint named as Defendant "Local 1181-1051, ATU Union." The Amended Complaint names as Defendant "Local 1181-1061, ATU Union,"; however, the Union indicates that its proper name is "Local 1181-1061, Amalgamated Transit Union, AFL-CIO."

[2]     Plaintiff's reference to the "Federal statute" is less than clear to the Court. As the Court indicated at the July 11, 2016 hearing, Plaintiff's claims potentially raise a number of federal questions. *See generally* Tr. of July 11, 2016 Hr'g ("July 11th Hr'g Tr."), Dkt. Entry No. 12.

and the common law of the State of New York." *Id.* at ¶ 46.  Plaintiff seeks monetary damages from Boro and the Union.  *Id.* at Prayer for Relief.  Plaintiff also seeks equitable relief in the form of reinstatement to his former position and an injunction prohibiting Boro and its employees from committing further discriminatory acts against Plaintiff.  *Id.*

Defendants moved separately to dismiss the Amended Complaint.  Boro argues that the Amended Complaint fails to state a claim for discrimination, retaliation, or hostile work environment, and that Plaintiff merely is trying to relitigate an adverse arbitration decision that determined Boro had fired Plaintiff for "just cause."  *See generally* Boro's Mem. of Law in Supp. of its Mot. to Dismiss Am. Compl. ("Boro's Mem."), Dkt. Entry No. 22.  The Union argues that: (1) Plaintiff's fair representation claim is time barred; (2) the Union did not breach its duty of fair representation; and (3) any fair representation claim under New York state law is preempted by applicable federal laws.  *See generally* Union's Mem. of Law in Supp. of its Mot. Dismiss Am. Compl. ("Union's Mem."), Dkt. Entry No. 29.  For the reasons set forth more fully below, Defendants' motions are granted.

## BACKGROUND[3]

Plaintiff was employed by Boro as a bus driver from January 3, 2012 until March 11, 2015. Am. Compl. at ¶ 10.  Prior to his employment with Boro, Plaintiff worked for twelve years as a bus driver for a different employer.  *Id.*  During his twelve years as a bus driver prior to working for Boro, he had a clean driving record, had no criminal history for crimes involving anger, and never had been written up.  *Id.* at ¶ 21.  He further alleges that, during his employment with Boro, his work performance was "above satisfactory."  *Id.* at ¶ 11.  Plaintiff, who is black and of Haitian descent, *Id.* at ¶ 5, alleges primarily four incidents that provide the basis for his claims:

---

[3]     The facts, as detailed in the Amended Complaint, are assumed true only for purposes of this Opinion and Order.

First, Plaintiff allegedly on January 7, 2014 was assigned to drive a bus "in the middle of winter with a defective heating system." *Id.* at ¶ 12.  While he complained that driving children in a bus without heat was "against the rules," Plaintiff allegedly was assigned the same bus without repairs to the heating system again on January 8, 2014.  *Id.*  When Plaintiff again complained of the assignment, he was suspended for one day without pay, and unbeknownst to him at the time, a disciplinary notice was placed in his file.  *See Id.*  Plaintiff claims that "no other non black or non Haitian employees were assigned to drive a school bus under the same weather conditions."  *Id.* at ¶ 14.  Although he does not allege that he notified the Union of the assignments to buses with deficient heating systems or of the discipline he subsequently received, Plaintiff claims that the Union failed to represent him fairly in his disciplinary action.  *Id.* at ¶ 36.

Second, on March 6, 2014, Plaintiff complained to "the manager" that he was being treated differently than other non-white[4] and non-Haitian drivers.  *Id.* at ¶ 15.  Plaintiff also complained to Boro's payroll representative, Mario Belgrave, that his paychecks were "short[]."  *Id.*  Mr. Belgrave allegedly became "angry" at Plaintiff's complaint, and "failed to look into the matter." *Id.*  The same day, while operating his bus, Plaintiff received a phone call from Boro notifying him that he was suspended for the rest of the day without pay.  *Id.*  Plaintiff alleges that no reason was given for the suspension, and that Plaintiff again was written up without his knowledge.  *Id.* According to Plaintiff, "no other non black or non Haitian employees that complain[ed] to management about [the] same or other terms [of] their employment w[as] treated like the plaintiff." *Id.* at ¶ 18.  While Plaintiff does not allege that he notified the Union of the discipline he received on March 6, 2014, he nonetheless claims that the Union failed to fairly represent him in connection with this suspension.  *Id.* at ¶ 37.

---

[4]     Though the Amended Complaint refers to other non-white drivers, the Court believes that Plaintiff meant to refer to other non-black drivers.

Third, on October 17, 2014, Plaintiff allegedly sped through Boro's bus yard in his school bus. *Id.* at ¶ 19. The incident was observed by the "Yard Man," a non-black employee who did not have a speed gauge with which to measure Plaintiff's speed. *Id.* According to Plaintiff, he and "other non black or non Haitian drivers[] drove in a convoy to exit or enter" the bus yard at the same time and "none of the other said drivers were accused of speeding." *Id.* at ¶ 20. Boro told Plaintiff that the Yard Man "is a police [officer]" and dismissed Plaintiff that same day. *Id.* at ¶ 19. Plaintiff reported this incident to the Union. *Id.* Plaintiff alleges that he collected unemployment insurance benefits after his termination on October 17, 2014 because his termination was not for any misconduct. *Id.* at ¶ 22.

In the days following his October 17, 2014 termination, Boro issued employee disciplinary notices for three additional incidents involving Plaintiff: (1) on October 21, 2014, for driving his school bus without a safety bag and while in possession of a four-inch curved knife; (2) on October 22, 2014, for driving his school bus without a safety bag and "with an extremely dirty interior of the bus"; and (3) on October 24, 2014, for reckless driving in the company yard. *Id.* at ¶¶ 23-25. Plaintiff alleges that each of these disciplinary notices were pretextual, spurious, and discriminatory because "no other non black or non Haitian driver was treated similarly by defendant Boro." *Id.* at ¶ 26. Plaintiff claims he had no knowledge of these disciplinary notices until receiving the arbitration decision dated October 26, 2015. *Id.* at ¶¶ 16, 40. Plaintiff does not allege that he reported the disciplinary notices to the Union, but nonetheless claims that the Union failed to fairly represent him in connection with them. *Id.* at ¶ 40.

Two months after the October 17, 2014 incident, Plaintiff was asked by Boro to take anger management classes and two six-hour defensive driving classes. *Id.* at ¶ 19. He was offered a "last chance agreement," which he allegedly signed, without representation, and was reinstated to

his position as a bus driver.  *See Id.*  Plaintiff claims that the Union failed to fairly represent him in connection with his signing of the "last chance agreement."  *Id.* at ¶ 38.

Fourth, on March 11, 2015, Plaintiff transported a group of children to the College of Staten Island ("CSI").  *Id.* at ¶ 27.  A staff member told Plaintiff not to leave his bus unattended.  *Id.*  The staff member believed Plaintiff to be uncooperative and pointed Plaintiff out to the director of CSI. *Id.*  The director then instructed Plaintiff not to leave his bus unattended, and Plaintiff allegedly replied that he did not have to listen to her, and asked her, "who the hell do you think you are[?]" *Id.*  When the director told Plaintiff she would call his employer, Plaintiff allegedly responded, "I don't give a shit."  *Id.*  The director reported this incident to Boro, but did not report it to campus police.  *Id.* at ¶¶ 27-28.  Plaintiff alleges that he was terminated without an investigation and without any union representation.  *Id.* at ¶ 27.  He contends that no other non-black or non-Haitian bus driver was accused in a similar manner.  *Id.* at ¶ 32.  Plaintiff also alleges that he collected unemployment insurance benefits after his termination on March 11, 2015 because he was not terminated for any misconduct.  *Id.* at ¶ 33.

An arbitration was scheduled for July 14, 2015, but Plaintiff's union representative informed him that the director of CSI, who reported the March 11, 2015 incident to Boro, refused to appear.  *Id.* at ¶ 29.  The union representative further told Plaintiff that Boro had decided to reinstate him if he signed an agreement.  *Id.*  When Plaintiff told his union representative that he would like to review the agreement before signing it, the union representative allegedly became angry and told Plaintiff that "he will re-schedule the [a]rbitration [h]earing and that [P]laintiff will not win."  *Id.* at ¶ 30.  Plaintiff alleges that the Union failed to fairly represent him by rescheduling the arbitration "with malice" because he requested to read the agreement before signing it.  *Id.* at ¶ 39.

5

The arbitration was held on October 15, 2015.  *Id.* at ¶ 31.  The director of CSI, who Plaintiff alleges was coerced into testifying, testified that she could not identify Plaintiff as there were several bus drivers at the college that day.  *Id.*  Though he requested a Haitian-speaking interpreter, the Union did not provide one during the arbitration proceedings, which Plaintiff claims breached the Union's duty of fair representation.  *Id.* at ¶ 41.  On October 26, 2015, the arbitrator issued a decision finding that Plaintiff was dismissed for "just cause."  *See* Ex. B to Decl. of Richard A. Brook, Opinion & Award of Arbitrator, Dkt. Entry No. 28-2, at 8.

Plaintiff also alleges that at unknown time(s) and date(s) during his employment at Boro, Boro instructed Plaintiff not to wear his cap to work.  *Id.* at ¶ 34.  Boro also instructed Plaintiff not to wear his sunglasses to work "so that [Boro] could see his eyes to determine if [P]laintiff [was] using drugs."  *Id.* at ¶ 35.  According to Plaintiff, non-black employees were not prohibited from wearing a cap or sunglasses.  *Id.* at ¶¶ 34-35.

 Plaintiff claims that Boro's discipline of him and the prohibitions it imposed on him created a hostile work environment.  *Id.* at ¶¶ 32, 44.  He claims he was "treated unequal and unlike non black employees similarly situated."  *Id.* at ¶ 42.  He further claims that Boro retaliated against him for complaining of being treated in a discriminatory manner.  *Id.* at ¶ 43.

Plaintiff initially filed this action in state court on April 29, 2016.  *See* Notice of Removal ("Notice"), Dkt. Entry No. 1, at 8 (indicating filing in Supreme Court, Kings County on April 29, 2016).  On June 14, 2016, the Union filed a notice of removal with this Court.  *See generally Id.*  On July 1, 2016, the Court issued an order to show cause why the case should not be remanded to state court since the notice of removal was deficient on its face.  On July 11, 2016, at a hearing on the order to show cause, the Court concluded that, in essence, what Plaintiff seeks to do "is to reverse or undermine the arbitration award that was granted."  *See* July 11th Hr'g Tr. at 4:22-24;

*Id.* at 8:15-16 ("And you've just conceded that, in fact, plaintiff is trying to undo the arbitration award."). The Court held that jurisdiction was proper because Plaintiff's claims implicated, *inter alia*, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See* July 11th Hr'g Tr. at 12:2-18.

On July 21, 2016, Boro filed a motion to dismiss the complaint. *See* Dkt. Entry No. 9. The same day, the Union answered the complaint. Dkt. Entry No. 10. On September 12, 2016, Plaintiff moved to amend his complaint. Dkt. Entry No. 15. The Court granted Plaintiff's motion, and Plaintiff filed the Amended Complaint on October 13, 2016. *See generally* Am. Compl. Plaintiff's Amended Complaint raises the same claims as the initial complaint, but it additionally alleges that the Union breached its duty of fair representation "under the [f]ederal statute." *Id.* at ¶ 46. The Amended Complaint makes no reference to the FAA, NLRA, and only makes the same fleeting mention of the FLSA that was in the original complaint. *See generally* Am. Compl.

## DISCUSSION

### I.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *Iqbal* requires more than "'a formulaic recitation of the elements of a cause of action.'" *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). On a motion to dismiss, the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

Additionally, in deciding a motion to dismiss, courts may only consider the complaint itself, documents that are attached to, or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). A document "'upon which [the complaint] solely relies and which is integral to the complaint'" may be considered by a court even if it is not attached to or referenced in the complaint. *Id.* at 509 (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F. 2d 42, 47 (2d Cir. 1991)) (emphasis omitted). In addition, the Court will consider the relevant collective bargaining agreement ("CBA") between the Union and Boro where appropriate for the resolution of this motion.

## II.  Jurisdiction and Artful Pleading

As a threshold matter, the Court must consider whether it has jurisdiction over Plaintiff's claims. Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Vill. of Baxter Estates v. Rosen*, 2012 WL 3779412, at *2 (E.D.N.Y. Aug. 30, 2012) ("In the absence of diversity jurisdiction, federal-question jurisdiction is required."). Under the "well-pleaded complaint rule[,] . . . federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) (Scalia, J., dissenting) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *Romano v. Kazacos*,

609 F.3d 512, 518-19 (2d Cir. 2010) (citations omitted) ("Whether federal courts have federal question jurisdiction over an action is typically governed by the 'well-pleaded complaint' rule, pursuant to which federal question jurisdiction exists only if 'plaintiff's statements of his own cause of action show that it is based' on federal law.").

As noted above, Plaintiff's initial complaint did not, on its face, provide a basis for subject matter jurisdiction.  The Court made this point abundantly clear at the July 11, 2016 hearing.  *See* July 11, 2016 Hr'g Tr. at 4:6-9 ("In the Court's view, the notice of removal was deficient on its face.  The initial review by the Court revealed that this Court may not have subject matter jurisdiction over this matter . . . .").  At the hearing, Plaintiff indicated that "he wanted this case in the state supreme court" (*Id.* at 5:16-21), but the Court noted that, since, in effect, he is "trying to bring a case in a way that overturns an arbitration, . . . the Federal Arbitration Act applies" (*Id.* at 8:9-13).  The Court also pointed out that Plaintiff's state law claims against the Union were completely preempted by the NRLA.  *Id.* (citing *Nelson v. Amalgamated Transit Union Local 1181-1061, ALF-CIO*, 2015 WL 1529723, at *3-7 (E.D.N.Y. Apr. 3, 2015), *aff'd*, 652 F. App'x 47 (2d Cir. 2016), *cert. denied*, *Nelson v. MV Transp., Inc.*, 137 S. Ct. 1592 (2017)); *See also Nelson*, 652 F. App'x at 49 (summary order) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.")).

Plaintiff appears not to have heeded the Court's advice.  The Amended Complaint is far from a model of clarity, [5] and aside from a singular reference to the Union's duty of fair representation falling under the "[f]ederal statute" (Am. Compl. at ¶ 46), a reference that is less than clear to the Court given the vast body of federal statutes under which Plaintiff's claims could fall, the Amended Complaint does not purport to plead *any* federal claims.  Indeed, despite the case being removed to this Court, and the Court indicating that, at least some of Plaintiff's claims existed solely under federal law, the Amended Complaint's jurisdictional section invokes only the NYSHRL and NYCHRL.  *Id.* at ¶ 3.

It is well established that a plaintiff may not artfully plead his complaint to avoid federal jurisdiction.  "[T]he artful-pleading doctrine, [a] corollary to the well-pleaded complaint rule, prevents a plaintiff from avoiding [federal jurisdiction] by framing in terms of state law a complaint the real nature of [which] is federal, . . . or by omitting to plead necessary federal questions in a complaint."  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998)) (internal quotation marks omitted); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475-76 (1998)).  In cases of artful pleading, to prevent plaintiffs from avoided federal jurisdiction, the Court may "read into a complaint elements that the plaintiff omitted," and "construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit."  *Sullivan*, 470 F.3d at 271-72 (citing *Rivet*, 522 U.S. at 475).

Plaintiff contends that the Union breached its duty of fair representation in connection with Boro's termination of his employment.  *See* Am. Compl. at ¶¶ 42-49.  Since Plaintiff attacks the

---

[5]     While the Court is under an obligation to construe *pro se* pleadings liberally to raise the best possible arguments, *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), this is not a *pro se* case. Nonetheless, the Court liberally construes Plaintiff's poorly drafted Amended Complaint in deciding this motion.

arbitration process, and the underlying action taken by his employer, he, in essence, is bringing a

hybrid claim under § 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA")

and fair representation claim under the NLRA, the interplay of which the Supreme Court long ago

addressed:

> It has long been established that an individual employee may bring suit against his
> employer for breach of a collective bargaining agreement.  Ordinarily, however, an
> employee is required to attempt to exhaust any grievance or arbitration remedies
> provided in the collective bargaining agreement.  Subject to very limited judicial
> review, he will be bound by the result according to the finality provisions of the
> agreement . . . .  [H]owever, we [have] recognized that this rule works an
> unacceptable injustice when the union representing the employee in the
> grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary,
> or perfunctory fashion as to breach its duty of fair representation.  In such an
> instance, an employee may bring suit against both the employer and the union,
> notwithstanding the outcome or finality of the grievance or arbitration proceeding.
> Such a suit, as a formal matter, comprises two causes of action.  The suit against
> the employer rests on § 301 [of the Labor Management Relations Act], since the
> employee is alleging a breach of the collective bargaining agreement.  The suit
> against the union is one for breach of the union's duty of fair representation, which
> is implied under the scheme of the National Labor Relations Act.  Yet the two
> claims are inextricably interdependent.  To prevail against either the company or
> the Union . . . [employee-plaintiffs] must not only show that their discharge was
> contrary to the contract but must also carry the burden of demonstrating a breach
> of duty by the Union.  The employee may, if he chooses, sue one defendant and not
> the other; but the case he must prove is the same whether he sues one, the other, or
> both.  The suit is thus not a straightforward breach of contract suit under §
> 301 . . . but a hybrid § 301/fair representation claim, amounting to a direct
> challenge to the private settlement of disputes under [the collective-bargaining
> agreement] . . . .  [I]t has no close analogy in ordinary state law.

*DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 163-65 (1983) (citations and internal quotation

marks omitted); *See also Sullivan*, 424 F.3d at 272 (noting that § 301 claims completely preempt

state law claims).  Rather than construing Plaintiff's claim as a hybrid § 301/fair representation

claim, however, the Amended Complaint again construes Plaintiff's fair representation claim

under state law.  *See generally* Am. Compl.  Accordingly, the Court disregards Plaintiff's artful

pleading and analyzes the sufficiency of the Amended Complaint's allegations with respect to the

Union's duty of fair representation under the LMRA and NRLA.  *See Sullivan*, 470 F.3d at 271-

72 (citing *Rivet*, 522 U.S. at 475) (courts reviewing artful pleadings "construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit").

## III.    Claims Against the Union

Plaintiff claims that the Union failed to fairly represent him in connection with the disciplinary actions taken against him on January 8, 2014, March 6, 2014, October 17, 21, 22, and 24, 2014, and March 11, 2015, and also failed to fairly represent him at the October 15, 2015 arbitration hearing by not providing a Haitian-speaking interpreter.  Am. Compl. at ¶¶ 36-41. Plaintiff claims that the Union's breach of the duty of fair representation violates the "[f]ederal statute" and New York common law.  *Id.* at ¶ 46.  The Union argues that: (1) Plaintiff's claims are time barred; (2) its conduct did not breach the duty of fair representation; and (3) to the extent Plaintiff relies on New York state law in bringing his claims, that those claims are preempted.  *See* Union's Mem. at 7-13.

### A.    Hybrid § 301/Fair Representation Claims Under Federal Law

Though less than clear from the Amended Complaint, the Court construes Plaintiff's claim against the Union for breach of the duty of fair representation as arising under § 301 of the LMRA, 29 U.S.C. § 185(b).  It is the LMRA that imposes a duty of fair representation on unions.  *Id.*  The statute of limitations for this type of claim, originally derived from NLRA § 10(b), is six months from the time that the cause of action accrued, *i.e.*, the time that the Plaintiff reasonably should have known that the Union had breached its duty.  *See Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995); *Johnson v. D.M. Rothman Co.*, 861 F. Supp.2d 326, 335 (S.D.N.Y. 2012) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170-71 (1983)); *Pilchman v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 2011 WL 4526455, at *5 (S.D.N.Y. Sept. 29, 2011); *Vera v. Saks & Co.*, 424 F. Supp.2d 694, 708 (S.D.N.Y. 2006*)*.  Though most case law

invoking the statute of limitations involves hybrid LMRA section 301/duty of fair representation claims, the Second Circuit has held that it also applies to breach of the duty of fair representation claims standing alone. *Eatz v. DME Unit of Local Union No. 3 of the Int'l Bhd. of Elec. Workers, AFL-CIO*, 794 F.2d 29, 33 (2d Cir. 1986). The parties do not dispute that the statute of limitations is six months. Union's Mem. at 7; Pl.'s Mem. of Law in Opp'n to Union's Mot. to Dismiss ("Pl.'s Union Opp'n"), Dkt. Entry No. 31, at 3.[6]

As an initial matter, in opposing the Union's motion to dismiss, Plaintiff asserts a myriad of new factual allegations in his opposition brief, including that the statute of limitations should be tolled for fraud and that Plaintiff was unaware of the disciplinary actions taken in the January, March, and October 2014. *See generally* Pl.'s Union Opp'n. The Union argues that considering these new and additional allegations would be improper. Union's Reply Mem. of Law ("Union's Reply") at 1-2. The Court agrees with the Union; a plaintiff may not amend his pleadings through an opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citing *ITT v. Cornfeld*, 619 F.2d 909, 914 & n.6 (2d Cir. 1980) (holding that a party is not entitled to amend its complaint through motion papers)); *Willner v. Doar*, 2013 WL 4010205, at *5 (E.D.N.Y. Aug. 5, 2013) ("These allegations are nowhere to be found in plaintiff's amended complaint. Plaintiff may not amend his complaint through motion papers . . . ."). Accordingly, the Court disregards the new factual allegations contained in Plaintiff's motion papers.

The Court will assess the timeliness of each of Plaintiff's fair representation claims in turn, which generally fall into three categories: (1) the January 8, March 6, and October 21, 22, and 24, 2014 disciplinary actions taken where the Union allegedly "failed to legally and fairly represent the [P]laintiff,"; (2) the October 17, 2014 dismissal and attendant November 2014 "last chance

---

[6]    Plaintiff's opposition to the Union's motion to dismiss is not paginated. As such, the page numbers used herein are those assigned by the ECF system.

agreement," in which the Union "failed to advise or represent the [P]laintiff before he signed the . . . 'last chance agreement'"; and (3) the March 11, 2015 termination, the subsequent rescheduling of the July 14, 2015 arbitration "with malice," followed by the Union informing Plaintiff that he "will not win" the arbitration, and the Union's failure to provide a Haitian-speaking interpreter at the October 15, 2015 arbitration.  *See generally* Am. Compl.

Plaintiff makes conflicting claims about his awareness of the January 8 and March 6, 2014 written disciplinary notices.  The Amended Complaint alleges that Plaintiff was not aware of these disciplinary notices until he received the October 26, 2015 arbitration decision, *Id.* at ¶ 16, and Plaintiff's opposition brief states that Plaintiff saw these notices "for the first time" on or about September 29, 2016 during the parties' initial disclosures, Pl.'s Union Opp'n. at 5.  However, the January 8, 2014 disciplinary notice, which is included with other disciplinary notices as an exhibit to Plaintiff's opposition to the Union's motion to dismiss, is signed by Plaintiff. [7]  *Id.* at Ex. A, Dkt. Entry No. 31-1.  And while the March 6, 2014 notice is not signed by Plaintiff, the narrative purports to include many statements from the Plaintiff, suggesting he was present for the disciplinary hearing.  *Id.* (for example, "[t]his Driver states . . .").  Accordingly, the Court finds that Plaintiff was aware of these written disciplinary notices and the underlying facts that led to them at or around the date of the notices.  Since Plaintiff filed his state court complaint on April 29, 2016, any fair representation claim based on the January 8 and March 6, 2014 incidents, which occurred more than two years prior to the filing, is time barred.

---

[7]    While a party may not shore up a deficient complaint by adding allegations in his opposition to a motion to dismiss, the Court may properly consider documents "incorporated in [the complaint] by reference . . . or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  The Court finds that Plaintiff incorporated the disciplinary notices by reference into the Amended Complaint, was aware of the existence of the written disciplinary notices, and relied on their existence and the factual circumstances around them in bringing this suit, and, thus, they properly may be considered in deciding this motion.  Plaintiff certainly had notice of the documents, since he include them in his opposition to the Union's motion.

Similarly, the October 17, 21, 22, and 24, 2014 incidents resulted in a suspension, followed by a reinstatement agreed to by the Union and Boro, and signed by Plaintiff on November 5, 2014. *Id.* Plaintiff, therefore, was aware of any failure by the Union to fairly represent him in connection with his suspension following the October 2014 incidents, and any failure to advise him with respect to the "last chance agreement," by November 5, 2014, the date he signed the agreement, at the latest. Since Plaintiff's complaint was filed more than six months after November 5, 2014, claims based on the October 2014 incidents and the November 2014 "last chance agreement" the followed are also time barred.

Turning to the March 11, 2015 incident, Plaintiff alleges that the Union refused to let him review a proposed settlement agreement and rescheduled a July 14, 2015 arbitration "with malice" for October 15, 2015, telling Plaintiff that he "will not win." *See* Am. Compl. at ¶¶ 29-31, 39. While Plaintiff does not specifically allege when the Union communicated the refusal and rescheduling to him, the very latest Plaintiff could have been aware of these facts, and that the Union had not fairly represented him in connection with the March 11, 2015 incident, would be October 15, 2015, the date of the rescheduled arbitration. Since Plaintiff did not file the Amended Complaint until April 29, 2016, any claims based on the March 11, 2015 incident and the rescheduling of the arbitration are also untimely.

Plaintiff's final claim is based on the Union's failure to fairly represent him at the October 15, 2015 arbitration hearing by not granting his request for a Haitian-speaking interpreter. *Id.* at ¶ 41. The Second Circuit has found that where the claim involves a union's conduct in arbitration proceedings, accrual does not ordinarily occur until a decision is rendered. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 164-65 (2d Cir. 1989). To base accrual on an earlier act during the union's representation would be premature, as the effectiveness of the representation

generally cannot be measured before the outcome is realized.  *Id.* at 163.  As *Ghartey* recognizes, however, it is not always necessary to await the results of the arbitration.  "Where a union refuses or neglects to assist a union member, . . . decides to stop assisting a member, . . . or acts against the interests of a member, . . . a breach of duty by the union is apparent to the member at the time []he learns of the union action or inaction about which []he complains," and "it would indeed to be nonsensical to say that the member . . . only learns of the union's breach later, when []he suffers an adverse result."  *Id.* at 165.

Here, Plaintiff does not contend that the representation and end result was unfair, but rather he specifically contends that the Union breached its duty of fair representation by failing to provide him with a Haitian-speaking interpreter.  Am. Compl. at ¶ 41.  This failure would have been apparent to Plaintiff on the date of the hearing, October 15, 2015, when no interpreter was present, and under *Ghartey*, it would be "nonsensical" to hold that such a claim only arose after the arbitrator reached his decision.  *Ghartey*, 869 F.2d at 165.  Therefore, Plaintiff had six months from October 15, 2015, or until April 15, 2016, to file his complaint.  Having filed this action in state court on April 29, 2016, Plaintiff's claims against the Union stemming from the arbitration are untimely.

Even if Plaintiff's claim regarding the October 15, 2015 arbitration did not accrue until he received the arbitration decision, Plaintiff pleads no facts to suggest that his claim is timely.  The Amended Complaint does not allege when Plaintiff received the decision, which was issued October 26, 2015, and Plaintiff's assertion in his brief that he received it on October 30, 2015 is not properly considered on a motion to dismiss.  *See Romano v. Schachter Portnoy, L.L.C.*, 2017 WL 2804930, at *3 (E.D.N.Y. June 28, 2017) ("[N]one of these factual allegations appear in plaintiff's complaint[, and] [t]hey cannot, therefore, be considered on a motion to dismiss.");

*Hooper v. Berryhill*, 2017 WL 927843, at *1 n.3 (S.D.N.Y. Mar. 8, 2017) ("A memorandum of law is not a proper vehicle through which to present facts to the Court."); *see also Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 34 (2d Cir. 2012) ("[U]nsworn statements in a memorandum of law are not evidence.").

Assuming *arguendo* that Plaintiff did not receive the arbitration decision until October 30, 2016, and his claim did not accrue until he received the arbitration decision, his claim still fails. A Plaintiff has a heavy burden to demonstrate a breach of the duty of fair representation since "[a] breach of a statutory duty of fair representation occurs only when a union's conduct toward a member of a collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  Plaintiff falls fall short of his burden, since failure to provide an interpreter is insufficient to state a claim for breach of the duty of fair representation.  *See Nikci v. Quality Building Servs.*, 995 F. Supp.2d 240, 248 (S.D.N.Y. 2014) (citing *Betanzos v. Kinney Sys. Inc.*, 1996 WL 406524, at *5 (E.D.N.Y. July 15, 1996), *aff'd*, 113 F.3d 1229, at *3 (2d Cir. 1997) (noting that the record did not support a finding that plaintiff was not proficient in English)) ("[Plaintiff] cites no authority for the proposition that the failure to provide an interpreter is sufficient to allege a breach of the duty of fair representation; indeed, courts have rejected that proposition in the past.").

### B.    Preempted State Law Claims

The Amended Complaint also purports to assert claims against the Union for breach of the duty of fair representation under New York state law.  *See* Am. Compl. at ¶ 46 ("[D]efendant UNION breached the agreement of fair representation entered into with the plaintiff by the collective bargaining agreement under . . . the common law of the State of New York.").  As this Court previously indicated on the record on July 11, 2016, and as the Union points out (Union's

Mem. at 13), Plaintiff's state law claims are preempted by federal law.  *See* July 11th Hr'g Tr. at 11:1-12:5; *see also Nelson*, 2015 WL 1529723, at *6 ("[W]hether the collective bargaining agreement plays a central or merely referential role makes no difference; the court's need to approve or condemn the union's conduct must be done in light of federal case law defining the scope of that duty.").  Furthermore, counsel for Plaintiff conceded at the July 11, 2016 hearing that the state law claims against the Union were preempted.[8]  Accordingly, Plaintiff's claims against the Union for breach of the duty of fair representation are dismissed.

**IV.**     **Claims Against Boro**

    **A.**     **Challenge to the Arbitration Decision**

Though less than clear from the Amended Complaint, as the Court indicated at the July 11, 2016 hearing, in essence, Plaintiff seeks to overturn the October 26, 2015 arbitration decision.  *See* July 11th Hr'g Tr. at 4:22-24; *Id.* at 8:15-16 ("And you've just conceded that, in fact, plaintiff is trying to undo the arbitration award.").  Boro argues, and Plaintiff does not dispute, that Plaintiff failed to pursue the proper procedures to challenge the arbitration award.  Boro's Mem. at 18-20. The Court agrees.

Under the FAA, "[n]otice of a motion to vacate, modify or correct and award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  Under New York Civil Law and Procedure ("NYCPLR") § 7511(a), "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him."  *See also Hakala v. J.P. Morgan Sec., Inc.*, 2006 WL 1788962, at *2 (2d Cir. June 21, 2006).  "'When the three month limitations period has run without vacation of the

---

[8]     *See* July 11, 2016 Hr'g Tr. at 7:10-15 ("The Court: Well, I don't recall you citing any cases that actually contest the defendants' contention that the fact that the employment agreement actually falls under a collective bargaining agreement with the union that as such state law is preempted.  Mr. Ngati: No we – there is no contention.").

arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding.'" *Dalbec v. Alusuisse Flexible Packaging, Inc.*, 1997 WL 57242, at *1 (E.D.N.Y. Feb. 10, 1997) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984)).

Here, Plaintiff concedes that he has not given the required notice or made the required motion within the allowed time period. *See* July 11th Hr'g Tr. at 5:9-13 ("The Court: Well, why didn't you just appeal the arbitration award or move to contest the award? That would have been the proper procedure. Mr. Ngati: Well, I think it came to me late, Your Honor."). Therefore, to the extent Plaintiff seeks to overturn the determination of the arbitrator, his claim is untimely, and the Court need not address the merits of any such claim.

### B.      FLSA Claims

Plaintiff also seeks counsel's fees pursuant to section 16(b) of the FLSA. Am. Compl. at ¶ 1. Though the request for counsel's fees is the only reference to the FLSA in the Amended Complaint, since section 16(b) of the FLSA only entitles parties to fees for violations of the FLSA, the Court understands Plaintiff's poorly drafted Amended Complaint to also assert a discrimination claim under the FLSA. This claim, too, to the extent it could be construed as timely, fails.

### 1.      Timeliness of Plaintiff's FLSA Claim

The statute of limitations for FLSA claims is two years, but it is extended to three years in cases of willful violations of the FLSA. *See Cortes v. Warb Corp.*, 2016 WL 1266596, at *2 (E.D.N.Y. Mar. 15, 2016) (citing 29 U.S.C. § 255(a)). "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Williams v. Tri-State Biodiesel, L.L.C.*, 2015 WL 305362, at *19 (S.D.N.Y. Jan. 23, 2015) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir.

2009)) (internal quotation marks omitted).   It is the employee's burden "to show that the employer's violation of the FLSA was willful." *Id.* (citing *Young*, 586 F.3d at 207).

Here, Plaintiff has failed to make any showing that Boro's alleged discrimination was willful, and, therefore, the two-year statute of limitations applies.   Since Plaintiff arguably filed his "complaints" within the meaning of the FLSA on March 6, 2014, when he voiced his complaints of disparate treatment and his paychecks being short, his FLSA claims are untimely given that his state court complaint was filed more than two years later on April 29, 2016.

## 2.  Merits of Plaintiff's FLSA Claim

Assuming *arguendo* that Boro's FLSA violation was willful, and that Plaintiff's FLSA claim therefore is timely, the Amended Complaint fails to state a claim for retaliation under the FLSA.   The FLSA makes it unlawful to "discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . related to this chapter."   29 U.S.C. § 215(a)(3).   The Second Circuit has "repeatedly affirmed that the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy."   *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 113-14 (2d Cir. 2015) (internal quotation marks omitted); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp.3d 442, 458 (E.D.N.Y. 2014) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013)).

To state a claim for retaliation under the FLSA, a plaintiff must allege: "'(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'"   *Bergman v. Kids By the Bunch Too, Ltd.*, 2016 WL 4991549, at *7 (E.D.N.Y. May 10, 2016) (quoting *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010)).   The FLSA "does not restrict its protections [only] to employees who file formal, written

complaints with government agencies." *Greathouse*, 784 F.3d at 115. "An employee may premise a [FLSA] retaliation action on an oral complaint made to an employer." *Id.* at 107. However, "'[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Id.* (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

"[P]etty slight[s]" are not actionable as adverse employment actions, but an employment action disadvantages an employee "if it well might have dissuaded a reasonable worker from making or supporting [similar] charge[s]'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006). Finally, a plaintiff can establish a causal connection between the adverse action and the protected activity "'through evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action.'" *Aponte v. Modern Furniture Mfg. Co.*, 2016 WL 5372799, at *16 (E.D.N.Y. Sept. 26, 2016) (quoting *Mullins*, 626 F.3d at 53).

Here, Plaintiff alleges that he made two complaints on March 6, 2014: one to "the manager," that he was "being treated differently from the other non [black][9] and non Haitian drivers," and another to the payroll manager, Mario Belgrave, "about shortages in his pay roll [*sic*] checks." Am. Compl. at ¶ 15. Plaintiff does not allege that he made any other complaints, nor does he provide any additional details about his complaints.

Even if this was protected activity, which Plaintiff has not alleged it is, Plaintiff's general allegations are insufficient to put Boro on notice that Plaintiff was asserting his rights under the FLSA. *Greathouse*, 784 F.3d at 115 ("'[A] complaint must be sufficiently clear and detailed for a

---

[9] As noted above, *See* footnote 4, *supra*, though the Amended Complaint references treatment of other "non white" employees, the Court presumes this is a typo.

reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'").  Though specific mention of the FLSA is not necessary to make a "complaint," some courts hold that a plaintiff must at least hint at the illegality of the defendant's conduct.  *See, e.g.*, *Lasater v. Tex. A & M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012) ("[T]he complaint does need to be framed in terms of potential illegality."); *Cotto v. John C. Bonewicz, P.C.*, 2015 WL 3609167, at *9 (N.D. Ill. June 9, 2015) (complaint that "it was 'a little bit ridiculous' that she was asking him to work 12–16 hour days when he was paid 'only for eight hours'" not sufficiently clear); *Manfield v. Alutiiq Int'l Solutions, Inc.*, 851 F. Supp.2d 196, 206 (D. Me. 2012) (complaint about timesheet discrepancies without "voic[ing] an opinion" about illegality is insufficient); *But see Dunn v. Sederakis*, 143 F. Supp.3d 102, 112-13 (S.D.N.Y. 2015) ("This Court, however, is unprepared to hold that an explicit claim of illegality, as opposed to a clear articulation of facts indicative of illegality, is required for an oral complaint to support a claim of FLSA retaliation.").

Setting aside whether a plaintiff must "hint" at the illegality of a defendant's conduct, Plaintiff's allegations here are insufficient.  Absent from the Amended Complaint are allegations about the context in which these complaints were made and the content of the complaints.  Plaintiff does not allege that he explained to "the manager" how he was being treated differently than other employees such that Boro would be on notice that its conduct violated the FLSA.  Nor does Plaintiff allege that he provided the payroll manager with sufficient information to understand that Plaintiff was complaining of anything more than a clerical error in his paycheck.  Plaintiff's allegations amount to nothing more than "[a]bstract grumblings," which do not create a retaliation claim.  *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 44 (1st Cir. 1999) ("[T]here is a point at which an employee's concerns and comments are too generalized and informal to constitute

22

'complaints' that are 'filed' with an employer within the meaning of the [statute]").  Plaintiff's retaliation claim therefore fails at the first prong.

Even assuming that Plaintiff was engaging in protected activity and his complaints put Boro on notice that he was asserting his rights under the FLSA, it is not clear whether Plaintiff has sufficiently alleged that an adverse employment action occurred.  A written notice, which Plaintiff received on March 6, 2014, categorically is not an adverse action.  *See Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) ("[W]e note that oral and written warnings do not amount to materially adverse conduct.").  While Plaintiff was suspended following the March 6, 2014 notice, the ordinary application of an employer's disciplinary policies also is not an adverse employment action.  *Id.* ("Because [defendant] issued [plaintiff] warnings consistent with its progressive discipline policy, [plaintiff] did not suffer a materially adverse action under the circumstances.  Accordingly, [plaintiff] has not made out a *prima facie* case of retaliation on these grounds."); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("We agree that an employee does not suffer a materially adverse change in term and conditions of employment where the employer merely enforces preexisting disciplinary policies in a reasonable manner.  The application of the [Defendant's] disciplinary policies to [plaintiff], without more, does not constitute adverse employment action.").  Plaintiff's strongest argument is that his termination on March 11, 2015 constituted an adverse employment action.  However, he has failed to show that either his suspension or termination was causally related to his complaints.

First, the record indicates that Plaintiff was disciplined in January 2014, prior to Plaintiff making any complaints, which weighs against finding a causal connection.  *See Pierre v. Air Serv Security*, 2016 WL 5136256, at *8 (E.D.N.Y. Sept. 21, 2016) (disciplinary action prior to complaints "destroy[ed] any inference that he was disciplined in retaliation for protected activity")

23

(internal quotation marks omitted).  Second, with respect to the suspension, while the Amended Complaint alleges that Plaintiff was suspended on March 6, 2014 "without pay and [with] no reasons given for the suspension," Am. Compl. at ¶ 15, the March 6, 2014 hearing documentation indicates that the suspension was for Plaintiff's failure to pick up a child on Plaintiff's bus route, which indisputably is unrelated to Plaintiff's complaints.  *See* Pl.'s Union Opp'n at Ex. A, Dkt. Entry No. 31-1.[10]  Third, Plaintiff's termination on March 11, 2015 occurred more than one year after the date of his complaints, which significantly diminishes any causal connection.  *See Chang*, 254 F. App'x at 839 (citations omitted) ("[Plaintiff's] termination . . . occurred almost one year after her complaint of discrimination, thus undermining any causal nexus based on temporal proximity."); *see also Kugler v. Donahoe*, 2014 WL 1010317, at *9 (E.D.N.Y. Mar. 17, 2014) (collecting cases within the Second Circuit holding that a span of even two months defeats an inference of causal relationship); *Alleva v. N.Y.C. Dep't of Investigation*, 696 F. Supp.2d 273, 284 (E.D.N.Y. 2010) (no causal link with termination eighteen months after complaint).  Since Plaintiff has failed to establish a *prima facie* case for retaliation under the FLSA, his claims are dismissed.

### C.     Remaining Claims

Plaintiff also alleges discrimination and retaliation claims under the NYSHRL and NYCHRL, as well as a hostile work environment claim,[11] though it is not clear whether Plaintiff

---

[10]     The hearing documentation further contradicts Plaintiff's claim that he was suspended on March 6, 2014 for the remainder of the day since it indicates Plaintiff was suspended for one day on March 13, 2014.  *See* Pl.'s Union Opp'n at Ex. A.

[11]     The Court notes that claims for retaliation, discrimination, and hostile work environment are the same under Title VII and the NYSHRL.  *See Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) (citation omitted) ("'[R]etaliation claims are identical under Title VII and NYSHRL.'"); *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014) (citation omitted) ("The same standards [under Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL."); *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)) ("Because NYSHRL [discrimination] claims are subject to the same standard as Title VII claims, I will consider them together.").  However, to bring claims under Title VII, which, again, it is not clear Plaintiff is doing, Plaintiff must first file a complaint with the Equal Employment Opportunity Commission ("EEOC").  *See, e.g.*, *Fitzgerald v. Henderson*, 251 F.3d 345, 358-59 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-16) (additional citations

brings this claim under either state or federal law.  Having construed the Amended Complaint liberally and dismissed all federal claims apparent to the Court, the Court declines to exercise supplemental jurisdiction over any state claims pursuant to 28 U.S.C. § 1367(c)(3).

Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006).  In light of the dismissal of all federal claims in this action at the pleadings stage, and upon consideration of all relevant factors, *i.e.*, judicial economy, convenience, fairness and comity, *see Kolari*, 455 F.3d at 122, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining pendant state law claims. Accordingly, Plaintiff's claims are dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss the Amended Complaint are granted.  The Amended Complaint is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2017

/s/
DORA L.  IRIZARRY
Chief Judge

---

omitted) ("Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures.").  Plaintiff has not alleged that he has filed a complaint with the EEOC, and, therefore, the Court would lack jurisdiction over any such claims in any event.  *Id.* at 359 (citations omitted) ("If a claimant has failed to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim.").